UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | No. 1:06-cr-05 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| ) | |
| WILLARD WAYNE HOWARD ) | |
| ) | |

**MEMORANDUM**

Defendant Willard Wayne Howard ("Defendant") filed a motion to suppress (Court File No. 50). The Court referred his motion to United States Magistrate Judge Susan K. Lee to issue a report and recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1) (Court File No. 54). Magistrate Judge Lee conducted an evidentiary hearing and entertained arguments from counsel. Following the hearing, Magistrate Judge Lee filed a thorough R&R setting out the facts as developed at the hearing and the legal issues arising from those facts. Based upon those fact Magistrate Judge Lee in her R&R recommended Defendant's motion be granted (Court File No. 78). The Government timely filed its objections to the R&R (Court File No. 80) and Defendant filed a response to the Government's objections (Court File No. 81).

For the following reasons, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R with the exception of her conclusion the evidence found inside the Chevrolet Suburban should be suppressed. There is one additional legal issue the Court deems worthy of consideration that was not adequately explored or developed by the parties. Accordingly, the Court will withhold ruling on that one aspect of the R&R and **REFER** this one issue back to the magistrate judge for her to

consider not withstanding the arrest of Defendant, whether the evidence obtained from the Suburban would have been discovered anyway. It strikes the Court that possibly the inevitable discovery doctrine or the independent source doctrine might apply. Should additional evidence be needed, the magistrate judge is authorized to take such additional evidence. She is also authorized to accept additional arguments from counsel. Further, the Court will **GRANT IN PART** Defendant's motion to suppress and suppress any incriminating statements he made at the wrecker service.

I. **STANDARD OF REVIEW**

"A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

II. **RELEVANT FACTS**

The Government does not object to the magistrate judge's recitation of facts or findings of credibility. Therefore, the Court will **ACCEPT** and **ADOPT** the facts and credibility determinations as detailed in the R&R (Court File No. 78).

The Court will briefly summarize the facts of this case. On December 12, 2005, Bradley County, Tennessee Sheriff's Office Detectives Joe Renner ("Renner"), Eduardo Choate ("Choate"), and Shane McKee ("McKee") were involved in a traffic stop of Antonio Benitez ("Benitez"). Benitez was pulled over for a minor traffic violation in Bradley County while headed north on I-75. Benitez was driving a Volkswagen Passat, which was not registered to him, without a driver's license. The detectives found five kilograms of cocaine located in a false compartment in the Passat and two cell phones. The detectives seized the items and transported Benitez to the Bradley County

2

Sheriff's Office. While there, one of the cell phones rang. Choate answered the phone and told the unidentified Hispanic male caller he worked for a towing company and the Passat had been wrecked and towed to the wrecker service. He gave the caller Renner's cell phone number as a contact number for the wrecker service.

Later that same day, Renner received a telephone call from Benitez's girlfriend, Amy Cornwell ("Cornwell"). Cornwell asked about the condition of the Passat, how much it would cost to get it out of storage, and its location. There is no evidence Cornwell attempted to contact Benitez. Cornwell told Renner she and her stepfather would drive to Cleveland, Tennessee to pick up the Passat on December 14, 2005. No officer or detective attempted to obtain a search or arrest warrant.

On December 14, 2005, Defendant drove a Chevrolet Suburban, with Cornwell as a passenger, from Kentucky to Cleveland, Tennessee to pick up the Passat. Upon arriving at the wrecker service, Cornwell walked into the office while Defendant remained in the Suburban. Renner, acting in an undercover capacity as a wrecker service employee, told Cornwell a secret compartment had been found in the Passat and he would call the police if she did not give him $500. Cornwell told Renner she did not know what he was talking about and he could keep the Passat. Renner then arrested Cornwell.

At about the same time, Choate, McKee, and Bradley County, Tennessee Sheriff's Office Detective Jerry Rogers ("Rogers") ordered Defendant out of the Suburban, arrested him, took him into a small office in the wrecker service, and apprised him of his *Miranda* rights. Choate then retrieved his drug-detection dog, Titan. Titan walked around the Suburban and responded to the rear door of the Suburban in such a manner that Choate interpreted Titan's response as an alert to the presence of illegal drugs. After Titan alerted, Choate went into the office where Defendant was

being held and asked him if he had any narcotics, guns, or large amounts of money in the Suburban. Defendant stated there were no drugs or guns in the Suburban. Choate then asked Defendant if he had large amounts of currency in his car. Defendant did not respond so Choate asked him again if he had large amounts of money in the Suburban. Defendant responded he did not have any guns or drugs and then said, "You can check it. I don't have that stuff. I don't do that stuff." Afterwards, the Suburban was searched. The search yielded approximately $100,000 in cash.

On February 16, 2006, Defendant filed a motion to suppress the evidence seized from the search of the Suburban and the statements he made while being interrogated (Court File Nos. 50, 51). The magistrate judge recommends his motion be granted and the evidence be suppressed reasoning there was not probable cause to arrest Defendant and any evidence seized thereafter was the fruit of the poisonous tree (Court File No. 78).

### III.  DISCUSSION

The Government objects to the magistrate judge's conclusion there was no probable cause to arrest Defendant. Further, the Government argues even if probable cause was lacking, the search of the vehicle is still justified because the drug dog's alert on the vehicle was wholly independent of any constitutional violation. The Court will discuss the Government's contentions in turn.

### A.    Probable Cause

The Government argues probable cause was not lacking because the following was known to law enforcement personnel before Defendant was arrested and the Suburban was searched: (1) the day Benitez was stopped, he was headed north on I-75 without a driver's license in a car that was

4

Case 1:06-cr-00005-TRM-MCLC   Document 89   Filed 06/06/06   Page 4 of 13   PageID #: 188

not registered to him and had a Cobb County, Georgia[1] license plate; (2) Atlanta is a source city for cocaine; (3) Benitez could speak very little English; (4) five kilograms of cocaine is worth nearly one hundred thousand dollars; (5) other than the cell phones and cocaine, Benitez did not have anything of value in the Passat; (6) an unidentified Hispanic male called Benitez's cell phone and was provided with Renner's cell phone number as the wrecking service number; (7) shortly thereafter Cornwell called Renner's cell phone asking about the Passat; (8) in a large drug deal it is not unusual for the supplier of the cocaine to monitor the delivery; (9) Cornwell showed a lot of interest in the Passat and no interest in Benitez; and (10) Cornwell did not contact Benitez (Court File No. 80, pp. 3-5).

Although the proponent of a motion to suppress generally bears the burden of establishing his or her Fourth Amendment rights were violated by a challenged search or seizure, *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978), it is the Government's burden to demonstrate by a preponderance of the evidence that a particular seizure was based on probable cause. *United States v. Pena*, 961 F.2d 333, 338-39 (2d Cir. 1992); *see United States v. Baldwin*, 114 Fed. App'x 675, 681 (6th Cir. 2004) (unpublished); *United States v. Wallace*, 2005 WL 2922226, at *9 (E.D. Tenn. Nov. 3, 2005) (unpublished). A warrantless arrest is lawful if the officer has probable cause to believe the suspect either is, has, or is about to commit a crime. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). Probable cause exists if there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *United States v. DeFillippo*, 443 U.S. 31, 37 (1979); *see also McCurdy v. Montgomery*

---

[1] Cobb County is slightly north of Atlanta, Georgia.

*County*, 240 F.3d 512, 517 (6th Cir. 2001).

"[T]he existence of probable cause should be determined on the totality of the circumstances. This totality of the circumstances analysis includes a realistic assessment of the situation from a law enforcement officer's perspective." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (citations omitted). "Moreover, the objective reasonableness of the facts relevant to a probable cause determination is paramount, and the officer's subjective intentions are irrelevant." *McCurdy*, 240 F.3d at 517.

After reviewing the record, and upon consideration of the applicable law, counsel's arguments, and the totality of the circumstances, the Court agrees with the magistrate judge's analysis and conclusion there was no probable cause to arrest Defendant. Benitez was obviously engaged in criminal activities and it was reasonable for the officers to conclude he was a drug mule or something more. He spoke little English, was driving from an area of the country known to be a large source of cocaine in a car that was not registered to him and had a hidden compartment with a large quantity of drugs. In addition, Benitez did not have a driver's license or anything of value in the car other than the drugs and cell phones.

The difficulty arises with Defendant's connection. Admittedly, it is suspicious that Defendant arrived at the scene of the automobile. The officers had reason to suspect Defendant might have been involved with Benitez and had amply reason to question him. They also would have had reason to detain him for a short period to ascertain who he was. However, none of this rises to the level of probable cause.

There is no evidence Defendant was the person who called Benitez the day he was arrested. In fact, Renner stated Defendant did not sound like the man who originally called Benitez's cell

6

phone (Court File No. 78, p. 4).  Further, the officers knew of no relationship between Benitez and Defendant.  All the officers knew was someone purporting to be Benitez's girlfriend indicated she would drive from Kentucky with her stepfather to pick up the Passat.

In its brief, the Government focuses heavily on the fact Cornwell was very concerned about the Passat but not with Benitez and the fact Benitez would have been inconvenienced if Cornwell picked up the car (Court File No. 80, pp. 3-5).  These facts, along with all of the other circumstances gave law enforcement reason to suspect Cornwell was involved in criminal activity.  Whether this suspicion rises to probable cause or not against Cornwell it does not strengthen their case with respect to Defendant.  Their suspicions regarding Defendant simply do not rise to the level of probable cause.  At no time did Defendant attempt to call Renner or communicate to anyone he had an interest in the Passat.  Upon arriving at the wrecker service, Defendant remained in the Suburban while Cornwell went inside the wrecker service to retrieve the Passat.

The Government relies on *Maryland v. Pringle*, 540 U.S. 366 (2003), "for the proposition that reasonable officers could infer that it would be most . . . unlikely that either of the two [individuals] who arrived to retrieve the cocaine car would have been in the dark about the deal" (Court File No. 80, p. 7).  In *Pringle*, the defendant "was one of three men riding in a Nissan Maxima . . . [with] . . . $763 of rolled-up cash in the glove compartment." *Id.* at 371-72.  There were "[f]ive plastic glassine baggies of cocaine [] behind the back-seat armrest and accessible to all three men." *Id.* at 372.  After the three men were questioned, they would not tell the officer who owned the cocaine or money so the officer arrested all three men. *Id.*  The defendant argued this was a guilt-by-association case.  The Supreme Court rejected this argument and stated:

> Here we think it was reasonable for the officer to infer a common enterprise among the three men.  The quantity of drugs and cash in the car indicated the likelihood of

7

drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him.

*Id.* at 373. At the time of his arrest, Defendant was in a much different position than the defendant in *Pringle*. Drugs and cash had not been found in the Suburban and there was no evidence Defendant was connected to Benitez. Further, he had never shown an interest in the Passat. Cornwell was the only person who called about the Passat and she was the one who exited the Suburban to retrieve the Passat.[2]

Thus, taking all of the circumstances together, the Court concludes probable cause to arrest Defendant was lacking.

### B. Independent Source and Inevitable Discovery Doctrines

#### 1. Independent Source

The Government argues, for the first time in its objections to the R&R, if probable cause to arrest Defendant was not present, the evidence obtained from the search of the Suburban is still admissible under the independent source doctrine. Specifically, the Government contends Titan's alert was independent of Defendant's illegal arrest.

"The independent source rule holds that evidence will be admitted if the government shows that it was discovered through sources wholly independent of any constitutional violation." *United*

---

[2] As Defendant points out, this case is less like *Pringle* and more like *United States v. Di Re*, 332 U.S. 581 (1948), where the Supreme Court found probable cause was lacking and stated:

> The argument that one who "accompanies a criminal to a crime rendezvous" cannot be assumed to be a bystander, forceful enough in some circumstances, is farfetched when the meeting is not secretive or in a suspicious hide-out but in broad daylight, in plain sight of passers-by, in a public street of a large city, and where the alleged substantive crime is one which does not necessarily involve any act visibly criminal. . . . Presumptions of guilt are not lightly to be indulged from mere meetings.

8

*States v. Jenkins*, 396 F.3d 751, 757 (6th Cir. 2005) (citation and quotation omitted). The independent source doctrine is based on the idea the police should not be in a worse position than they would have been in absent any error or misconduct; therefore, the Court must determine whether, "granting establishment of the primary illegality, [the evidence has] been come at by the exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *United States v. Leake*, 95 F.3d 409, 412 (6th Cir. 1996) (*quoting Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). "The government bears the burden of proof in establishing the independent source . . . doctrine[]." *Leake*, 95 F.3d at 417.

In *United States v. Buchanon*, 72 F.3d 1217, 1226 (6th Cir. 1995), the Sixth Circuit held "when a canine narcotics sniff is performed as the result of the exploitation of a primary illegality, the fruits of that canine sniff must be suppressed." Thus, one question in this case, with respect to the money and any other evidence seized in the Suburban, is whether Titan's alert was an exploitation of Defendant's illegal arrest or whether the alert was wholly independent from the illegal arrest. Shortly after Defendant was illegally arrested, Titan waked around the Suburban and responded to the rear door of the Suburban in such a manner that Choate interpreted his response as an alert to the presence of illegal drugs. A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance. *United States v. Diaz*, 25 F.3d 392, 394-95 (6th Cir. 1994). Instead of searching the Suburban incident to the arrest, Choate retrieved Titan and had him walk around the Suburban. If the officers relied solely on Titan's alert as a basis to search the Suburban, the independent source doctrine may or may not apply. The officers did not testify whether they relied solely on Titan's alert. Since the record is not fully developed on this issue, the Court will refer this issue to the magistrate judge for her to

make a recommendation whether the evidence seized from the Suburban was wholly independent of the arrest.[3]

### 2.  Inevitable Discovery

Although the parties do not raise the inevitable discovery doctrine, the Court believes this doctrine should also be addressed by the magistrate judge. *See Murray v. United States*, 487 U.S. 533, 539 (1988) ("The inevitable discovery doctrine, with its distinct requirements, is in reality an extrapolation from the independent source doctrine . . . ."). "[U]nder the independent source doctrine, evidence that was *in fact* discovered lawfully, and not as a direct result of illegal activity, is admissible. In contrast, the inevitable discovery doctrine . . . permits the introduction of evidence that *inevitably would have* been discovered through lawful means, although the search that actually led to the discovery of the evidence was unlawful." *United States v. Herrold*, 962 F.2d 1131, 1140 (3d Cir. 1992) (referencing *Nix v. Williams*, 467 U.S. 431 (1984)); *see also United States v. Akridge*, 346 F.3d 618, 623 (6th Cir. 2003) (stating "the inevitable discovery doctrine . . . under which the exclusionary rule is inapplicable, even if the initial search and arrest were unlawful, as to evidence that inevitably would have been discovered by lawful means.").

Considering the totality of the circumstances already discussed above, when Defendant arrived at the wrecker service, the officers had reasonable and articulable suspicion he was part of the same criminal enterprise as Cornwell and Benitez.[4] Therefore, the officers had the right to

---

[3] In his response brief, Defendant suggests he may have driven away if he had not been illegally arrested. This fact is ultimately irrelevant to the independent source analysis because the officers could have constitutionally detained him for a reasonable period of time in order to confirm or allay their suspicions.

[4] The Court notes its conclusion the officers had reasonable suspicion to detain Defendant is not contradictory with its holding the officers did not have probable cause to arrest Defendant.

10

detain Defendant for a reasonable period of time to ascertain his identity, assure themselves he was not a threat, and to confirm or dispel their suspicions. *United States v. Hensley*, 469 U.S. 221, 226-27 (1985). However, the officers were not free to arrest him or to detain him indefinitely. A short detention for legitimate law enforcement purposes does not amount to an arrest. What is a reasonable period is a fact question that depends upon the circumstances of each case. In the instant case, the dog sniff occurred less than ten minutes after Defendant was illegally arrested (Suppression Hearing Transcript ("Tr.") at pp. 100, 123). If the officers had simply detained Defendant and allowed Titan to sniff the Suburban within ten minutes after he was initially detained, the officers would have been able to legally search the Suburban. *See United States v. Davis*, 430 F.3d 345, 354-55 (6th Cir. 2005) (finding a thirty to forty-five minute detention constitutionally reasonable while a drug detection dog was brought to the scene to confirm or dispel the police officers' suspicion drugs were in the vehicle). However, the Court is unaware of any testimony in the record concerning what the officers would have done with respect to the dog regardless of the arrest of Defendant. If the officers testify it was their intent to have the dog walk around the vehicle in any case, then the evidence may or may not have inevitably been discovered through lawful means.

For these reasons, the Court will **REFER** this issue to the magistrate judge for further consideration and if necessary to hold another evidentiary hearing and make a recommendation

---

*McPherson v. Kelsey*, 125 F.3d 989, 993 (6th Cir. 1997) ("Reasonable suspicion is not [] equal to a finding of probable cause. Rather, reasonable suspicion requires only specific objective facts upon which a prudent official, in light of his experience, would conclude illicit activity might be in progress. Further, reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is *less reliable* than that required to show probable cause." (quotation and citation omitted)).

whether Titan's alert was independent of the illegal arrest and whether the evidence seized in the Suburban would have been inevitably discovered by lawful means.

### C. Consent and Incriminating Statements

The Government concedes even if Defendant consented to the search of the Suburban when he said "You can check it," such consent was not "removed from the seizure, nor was there a sufficient intervening event, such that the search based upon consent could be upheld" (Court File No. 80, p. 11). Therefore, if the independent source doctrine or inevitable discovery doctrine does not apply, the evidence seized from the search of the Suburban should be suppressed.

Further, the Government admits if the officers lacked probable cause to arrest Defendant, any incriminating statements made by Defendant at the wrecker service should be suppressed as the fruit of the poisonous tree (Court File No. 80, p. 8). Since the Court has already determined probable cause for the arrest was lacking, the Court will **GRANT IN PART** Defendant's motion to suppress and suppress any incriminating statements he made at the wrecker service.

### IV. CONCLUSION

For the reasons stated above, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 78) with the exception of her conclusion the evidence found inside the Chevrolet Suburban should be suppressed. The Court will again **REFER** the motion to suppress to the magistrate judge for her to consider these additional legal issues and if necessary take further evidence to determine whether the evidence obtained from the Suburban is admissible under the independent source doctrine or inevitable discovery doctrine. Lastly, the Court will **GRANT IN PART** Defendant's motion to suppress (Court File No. 50) and suppress any incriminating

12

statements he made at the wrecker service.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

13