UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No: 1:06-cr-05-02 |
| v. ) | |
| ) | Chief U.S. Judge Curtis L. Collier |
| WILLARD WAYNE HOWARD, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

Defendant Willard Wayne Howard ("Defendant") filed a motion to suppress (Court File No. 50), which was referred to Magistrate Judge Susan K. Lee for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) (Court File No. 54). After the first suppression hearing and extensive briefing, the magistrate judge issued a report and recommendation (Court File No. 78). The Court accepted and adopted the recommendations except for the recommendation that the Court suppress evidence found in the Defendant's vehicle (Court File No. 89). The issue of whether the evidence found in the vehicle should be suppressed was referred back to the magistrate judge for the taking of further evidence, and for consideration of the independent source and inevitable discovery exceptions to the exclusionary rule (Court File No. 90).

Defendant also filed a motion to suppress all evidence found during the search of the property located at 15712 Carlisle Road, Crittenden, Kentucky (Court File No. 84). This motion to suppress was also referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) (Court File No. 88). Subsequently, Defendant filed a supplemental motion to suppress the search of the property located at 15712 Carlisle Road (Court File No. 109).

The magistrate judge held an evidentiary hearing with respect to the motions to suppress on January 4, 2007 (Court File No. 123). At Defendant's request and without objection, the portion of the hearing concerning evidence from the search of the Carlisle Road property was continued in order to allow Defendant additional time to complete certain investigative work concerning the Carlisle Road search warrant. Defendant completed his investigation, and then the magistrate judge held a second evidentiary hearing concerning the search of the Carlisle Road property on August 16, 2007 (Court File No. 149).

The parties have filed several motions and memorandums addressing various issues raised in the pending motions to suppress (Court File Nos. 80, 81, 85, 86, 87, 110, 124, 125, 127, 151 152 & 159). The magistrate judge issued her opinion recommending this Court deny Defendant's motion to suppress (Court File No. 153). Defendant failed to file objections within the required ten days of the magistrate's report and recommendation, but the Court granted an extension for excusable neglect (Court File No. 158). And, Defendant has filed objections to the magistrate judge's report and recommendations (Court File No. 159). For the following reasons this Court will **ACCEPT** and **ADOPT** the magistrate judge's report and recommendations, and will **DENY** Defendant's motion to suppress the evidence found in Defendant's Suburban and Defendant's trailer.

I.  **FACTS**

The facts of this case were set out in full in the Court's earlier opinion, *United States v. Howard*, 448 F.Supp.2d 889, 892-94 (E.D. Tenn. 2006). The Court will not repeat what was stated in that opinion, but will provide sufficient facts here for the analysis.

This case began on December 12, 2005 when Bradley County, Tennessee Sheriff's officers arrested Antonio Benitez ("Benitez"). Benitez had committed a minor traffic violation in Bradley County while driving north in a Volkswagen Passat on Interstate 75. The detectives found five kilograms of cocaine located in a hidden compartment in the Passat and two cell phones. The detectives seized the items and transported Benitez to the Bradley County Sheriff's Office.

One of Benitez's cell phones rang. Detective Eduardo Choate ("Choate") answered the phone and told the unidentified Hispanic male caller that he worked for a wrecker service and the service had possession of a wrecked Passat. He then gave Detective Joe Renner's ("Renner's") cell phone number as a contact number for the wrecker service.

Within a day, Amy Cornwell ("Cornwell") called Renner, claimed to be Benitez's girlfriend, asked about the condition of the Passat, its location, and how much it would cost to get it out of storage. There is no evidence Cornwell attempted to contact Benitez. Cornwell told Renner she and her stepfather would drive to Cleveland, Tennessee to pick up the Passat on December 14, 2005.

Defendant drove a Chevrolet Suburban, with Cornwell as a passenger, from Kentucky to Cleveland, Tennessee to pick up the Passat. Upon arriving at the wrecker service, Cornwell walked into the office while Defendant remained in the Suburban. Renner, acting in an undercover capacity as a wrecker service employee, told Cornwell he found a secret compartment in the Passat, and he would call the police if she did not give him $ 500. Cornwell told Renner she did not know what he was talking about and he could keep the Passat. Renner then arrested Cornwell.

Meanwhile, Choate, Detective McKee ("McKee"), and Detective Jerry Rogers ("Rogers") ordered Defendant out of the Suburban, handcuffed him, and took him into a small office in the wrecker service. The officers then read him his rights in accordance with the *Miranda* decision.

3

While Renner and McKee remained with Defendant, Choate exited the office to search the Suburban. Lieutenant Queen then told Choate to have his dog sniff the Suburban to see if the Suburban contained contraband. Choate retrieved his dog, Titan, from his vehicle, and walked Titan around the Suburban. Titan alerted on the rear door of the Suburban, and Choate interpreted this response as an alert to the presence of illegal drugs.

After Titan alerted, Choate went into the office and asked Defendant if he had any narcotics, guns, or large amounts of money in the Suburban. Defendant stated there were no drugs or guns in the Suburban. Choate then asked Defendant if he had large amounts of currency in his car. Defendant did not respond, so Choate asked again if he had large amounts of money in the Suburban. Defendant responded he did not have any guns or drugs, and then said, "Your can check it. I don't have that stuff. I don't do that stuff." The officers then asked him, "How much money are we talking about here?" Defendant said "About a hundred thousand." Afterwards, the officers searched the Suburban and found approximately $100,000.

Later, Renner contacted officer Matthew Rolfsen ("Rolfson") of the Northern Kentucky Drug Strike Force. Rolfson related this conversation to officer Scott Hardcorn ("Hardcorn") of the Northern Kentucky Drug Strike Force. Hardcorn ran a check on the license plate of the Suburban, and he found the vehicle was registered to Defendant at 15712 Carlisle Road. The telephone number Cornwell gave Renner was also registered to Defendant at 15712 Carlisle Road. Hardcorn confirmed through a computer check that Defendant in fact owned 15712 Carlisle Road. Finally, Hardcorn ran a check on Defendant's driver's license and learned Defendant had a history of drug arrests, including an arrest for manufacturing methamphetamine at 15712 Carlisle Road.

Based upon all of this information, the Kentucky authorities decided to apply for a search

4

warrant for 15712 Carlisle Road. Prior to preparing the affidavit for the search warrant, Hardcorn drove to 15712 Carlisle Road and observed the property from his car. Hardcorn did not leave his car because he did not wish to alert anyone in the house the police were interested in the house. Hardcorn felt time was of the essence because he suspected contraband may be present at the property, and wished to seize it before anyone had an opportunity to remove or destroy it.

The property at issue is actually composed of two plots of land. Hardcorn believed there was only one plot of land, which was addressed as 15712 Carlisle Road. In fact, Defendant owned both single-wide trailers, which were on different plots of land. At the suppression hearing, the magistrate judge and the parties referred to the trailer at 15712 Carlisle Road as Trailer #1 and the trailer at 16590 Carlisle Road as Trailer #2. The two trailers are approximately 100 yards apart and share a common driveway. The only street number visible on the property is 15712 Carlisle Road, which appears on a mailbox across the road from the common driveway. The officers found the incriminating evidence at Trailer #2 which is erroneously described in the search warrant as being on the 15712 Carlisle Road plot.

Hardcorn then wrote the affidavit and warrant; the judge signed the warrant at 1:35 A.M. on December 15, 2005. Immediately after the warrant was issued, Hardcorn, Rolfsen and other officers executed the warrant. The only objects found at Trailer #2 were a money counter and a set of scales.

## II. **STANDARD OF REVIEW**

This Court must conduct a *de novo* review of those portions of the magistrate's report and recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

### A. Probable Cause to Search Vehicle and Independent Source Doctrine

Defendant first "objects to the magistrate judge's determination there was sufficient probable cause to authorize the warrantless search of his vehicle as well as the finding the government met its burden of demonstrating that the $95,000.00 at issue would be admissible under both the independent source rule and the inevitable discovery doctrine." (Court File No. 159, at 1). Upon further review, this Court finds the evidence is admissible regardless of the independent source or inevitable discovery doctrines.

The Government must show three things for this search to be constitutional. First, the Suburban was properly detained[1]. Second, the sniff by the dog was proper. And third, the dog's alert gave the officers probable cause to believe contraband or evidence was present in the Suburban.

This Court has previously found reasonable suspicion existed to believe Defendant was part of a criminal enterprise which included Benitez and Cornwell (Court File No. 89, at 10). The police had reasonable suspicion to believe Defendant had driven down as part of a drug trafficking conspiracy, therefore there was reasonable suspicion to believe contraband or evidence may be found in the Suburban. The police may detain personal property on reasonable suspicion as well as individuals. *United States v. Place*, 462 U.S. 696, 705 (1983). The police, therefore, could detain the Suburban "for the purpose of pursuing a limited course of investigation . . . that would quickly

---

[1]The Court notes Defendant's detention may be unconstitutional in its means. The parties have not briefed or argued whether the detention of Defendant had become significant enough to be an arrest requiring probable cause rather than a *Terry* stop. The Court need not reach this issue as even if the police exceeded their authority granted by reasonable suspicion, the dog sniff is nonetheless untainted by that illegality. *United States v. Bentley*, 29 F.3d 1073, 1075-76 (6th Cir. 1994) (premature arrest played no role in later plain view discovery where detention justified by *Terry* stop).

confirm or dispel the authorities' suspicion." *Id*. at 702.

The detention lasted only ten minutes before the dog sniffed the vehicle (Court File No. 78, at 21-22). The United States Court of Appeals for the Sixth Circuit has previously approved longer detentions, and Defendant does not advance any particular argument for why the length of the detention makes this stop unconstitutional. *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (thirty to forty-five minutes reasonable). The police had a reasonable suspicion Defendant was engaged in the drug trade. In such a circumstance, a ten minute detention of the vehicle while one officer retrieves his dog to test the car for drug residue is reasonable. There is, therefore, no problem with the validity of the *Terry* stop and detention of the Suburban.

The police may, of course, subject a car to the scrutiny of trained narcotics detection dog without violating the Fourth Amendment. *Place*, 462 U.S. at 707. Under the car exception to the Fourth Amendment there is no warrant requirement for a policeman to search an automobile, rather the police need only probable cause. *Chambers v. Maroney*, 399 U.S. 42, 48 (1970). If the dog sniff yielded probable cause the search was constitutional; if the dog sniff did not yield probable cause, then the search was not constitutional.

Defendant argues probable cause was lacking because the government failed to detail the dog's qualifications and ongoing training (Court File No. 159, at 7-9). This line of discussion merely rehashes Defendant's proffered line of argument for which he wished expert assistance (Court File No. 100, at 10-11). This Court previously rejected this argument because Defendant could not show any generally accepted standards on the certification of drug detection dogs (*id*. at 11). Outside such a standard all that results is a merely a contrary opinion, and the Court should decide the resulting conflict as any credibility issue, for which, expert assistance is not helpful (*id*.).

7

Detective Choate offered credible testimony his dog was both certified and reliable. Detective Choate testified Titan was certified by the National Narcotic Detector Dog Association (Court File No. 75, at 51-52). The Government submitted copies of the certificates and the detective indicated Titan had recently been recertified (*id.* at 52-54). Titan also had continuing training in compliance with departmental policy (*id.* at 55). Choate testified, to his knowledge, Titan had not yet alerted on a false positive (Titan had never alerted when no drugs were present) (*id.* at 56). Defendant offered no evidence and could offer no evidence contrary to this. Defendant was never in a position to refute or challenge this testimony[2]. Even the expert Defendant wished to hire could offer no testimony to refute Detective Choate's (Court File No. 100, at 10).

Additionally, Defendant's fixation on certification is misplaced. Certification, much like a college or legal degree is, in the end, simply a statement by an institution that an individual has satisfactorily completed a particular course of study. The officer's testimony as well as the records show Titan had been deployed numerous times, and when Titan alerted on an object or location it was uniformly when drugs had been present. That alone, if credited, is sufficient to show Titan was reliable, and the alert was sufficient to create probable cause to search Defendant's Suburban. The magistrate judge credited Choate's testimony and explanation of the records; this Court, on the record, sees no reason to disagree with that determination.

When considering whether probable cause exists a court looks at the totality of the

---

[2]Defendant does point to two incidents of false negatives, Titan failing to alert despite the presence of drugs (Court File No. 159, at 11). Officer Choate offered an explanation for these failures, but even if the court were to accept them as false negatives they are of no help to Defendant.

8

circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). So the question is not so narrow as whether Titan's 'hit' constituted probable cause, rather, the question is whether Titan's 'hit' along with all the other facts known to the officers at the time constituted probable cause. Along with Titan's 'hit' the officers knew Cornwell claimed to be the girlfriend of Benitez, who possessed five kilograms of cocaine in a hidden compartment of his car. After Renner told her Benitez had been in an accident, his "girlfriend" drove down in two days without asking about Benitez's health or location after at least 13 conversations with Renner (Court File No. 75, at 29). After this, Titan alerted on the vehicle. The dog sniff provided the best reason to believe contraband might be found in the Suburban, but combined with a dubious story by individuals connected to a car which contained five kilograms of cocaine a man of reasonable prudence would be warranted "in the belief that contraband or evidence of a crime" would be found in the Suburban. *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

Under such circumstances, the magistrate was correct in her report that the police had probable cause to believe contraband was in Defendant's car. Since the 'hit' by Titan provided probable cause for the search of Defendant's car the result of that search is admissible.

**B       Independent Source and Inevitable Discovery Doctrines**

In its re-referral to the magistrate judge, the Court asked the magistrate judge to consider whether the independent source and/or the inevitable discovery doctrines might apply. The magistrate judge addressed both doctrines and found that each applied (Court File No. 153, at 20-21).

The Court has accepted and adopted the magistrate judge's report and recommendations that the detention of Defendant was constitutional. Therefore, this Court need not consider either the

9

inevitable discovery or independent source doctrines, nonetheless the Court will discuss them briefly in the interests of completeness. The Court will assume, for the sake of argument, Defendant was unlawfully arrested and not simply detained pursuant to *Terry*.

The Sixth Circuit recently discussed both doctrines in *United States v. Bowden*, 240 Fed. Appx. 56, 61, (6th Cir. 2007). The panel described the inevitable discovery doctrine as an exception to the exclusionary rule where evidence discovered during an illegal search would have been discovered anyway during a later legal search and the second search would have occurred regardless of whether the first search occurred. *Id* at 61, citing *Murray v. United States*, 487 U.S. 533 (1988).

The independent source doctrine, as the magistrate judge noted, is closely related to the inevitable discovery doctrine. It differs in large measure because the disputed evidence must have been discovered through lawful means.

The magistrate judge correctly concluded the inevitable discovery doctrine applied even if Defendant had been successful in demonstrating his arrest was illegal.

**C.     Affidavit for Search Warrant Lacked Probable Cause**

Defendant claims the warrant does not suffice to establish probable cause to search the 15712 Carlisle Road address. "The affidavit does not make any reference to any criminal activity at the location to be searched nor is there any indication that authorities had received information that evidence of a crime would be found at that location." (Court File No. 159, at 20-21).

A warrant request must describe the relationship between the alleged criminal conduct, the property to be seized, and the place to be searched. *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998), cert. denied, 526 U.S. 1077 (1999). "To justify a search, the circumstances

must indicate why evidence of illegal activity will be found 'in a particular place.' There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F. 3d 591, 594 (6th Cir.), cert. denied, 543 U.S. 851 (2004) (quoting *Van Shutters*, 163 F. 3d at 336-37). The determination of probable cause is made in the totality of the circumstances and depends on "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 230-31.

The affidavit sets forth facts, which indicate a fair probability the police could find evidence of drug trafficking at the Carlisle Road property. The affidavit included the following information: Benitez visited the Carlisle Road property once a month for over a year. Renner linked Cornwell's phone number to Defendant and the Carlisle Road property. The police verified the Suburban was registered to Defendant at 15712 Carlisle Road. The police knew the Suburban had contained approximately $100,000, which was a fair price for five kilograms of cocaine (Court File No. 163, at 26). These facts set out a connection between Defendant and 15712 Carlisle Road. The phone calls, the vehicle registration, and the currency connect the residence to the suspicious activity of the present case.

Considering the totality of the circumstances as set out in the four corners of the affidavit, and answering the commonsense, practical question of whether there is probable cause to believe that contraband or evidence is located in a particular place; the magistrate judge correctly determined there was a fair probability evidence of a crime would be found at 15712 Carlisle Road.

### D. The Search Warrant only granted authority for Trailer #1

Defendant argues the search warrant fails to authorize the search of Trailer #2[3]. Defendant argues the affidavit only requested to search what has been referred to as Trailer #1, and "all other language contained in the description merely provided directions as to how to locate Trailer #1." (Court File No. 159, at 22).

Defendant claims the police exceeded the search warrant, because the warrant only granted authority to search Trailer #1.

The search warrant describes the property to be searched as:

**On or in the premises numbered:**
15712 Carlisle Road
Crittenden, KY 41030
Kenton County

**More particularly described as:** A singlewide trailer, which is white in color with brown trim. The trailer has two entrances, both facing toward Carlisle Road. The front door is facing a brown barn. A brown metal pole barn is attached to the white trailer with several additional wooden structures by the pole barn. A mailbox with the numbers "15712" clearly posted on it is located across the street from the described property. Additionally, there is another single family trailer located approximately 100 yards to the right of the above described pole barn. This trailer is white in color with the front door facing toward Carlisle Road. The roof is dark in color with wooden steps going to the front door. All of the buildings described here are located on the property of 15712 Carlisle Road.

(Court File No 86, at 5).

The question is whether those descriptions were intended by the police and understood by the magistrate to be requests for the authority to search all those buildings or, as Defendant argues, merely a description of the main address. "[The Fourth Amendment's] protection consists in requiring that . . . inferences be drawn by a neutral and detached magistrate instead of being judged

---

[3] Before the magistrate, Defendant claimed the errors in the affidavit rendered the search warrant unconstitutional. Defendant appears to have abandoned this argument in his objections to the Report and Recommendation. In any event, this Court agrees with the magistrate judge's disposition of this argument (Court File No. 153, at 30-33).

by the officer engaged in the often competitive enterprise of ferreting out crime." *California v. Acevedo*, 500 U.S. 565, 586 (1991). The description in the warrant or affidavit is sufficient if it "is such that the officer with [the] search warrant can, with reasonable effort ascertain and identify the place intended [to be searched.]" *Steele v. United States*, 267 U.S. 498, 503 (1925). Therefore, if both the officer and the magistrate would objectively believe Trailer #2 was included as part of the "premises" to be searched, then the judgment of the magistrate has been interposed, and the description is sufficient.

Defendant errs in his reliance of the paragraph which "more particularly describes" the premises numbered 15712 Carlisle Road. The warrant begins with the statement the officer believes evidence of drug trafficking may be found on or in the premises numbered 15712 Carlisle Road. The warrant then provides a detailed description of a series of buildings, including both Trailer #1 and Trailer #2. This "more particularly described" paragraph ends with the sentence: "All of the buildings described here are located on the property of 15712 Carlisle Road." The officer's intention is reasonably clear. He stated he had probable cause to search the premises numbered 15712 Carlisle Road. The officer then described "premises" including Trailer #2, and finally clarified his intent by concluding all of the buildings described here are located on the property of 15712 Carlisle Road. The officer was reasonably clear in his intent to search all the buildings located at 15712 address, and therefore the warrant gave the police the authority to search those same buildings.

In addition, the warrant described Trailer #1 both by color and location, and then proceeded to describe other buildings, which the affiant believed were on the same plot. The first trailer was sufficiently described in the first sentence, and by reference to the mailbox. Under the Defendant's

interpretation of the search warrant, the remainder is mere surplusage; the police, in effect, merely overdescribed the place to be searched, Trailer #1. A far more reasonable reading of the search warrant is as a listing of places to be searched which would include Trailer #2 within the listing of buildings to be searched.

Because no reasonable magistrate or officer would take the warrant to mean what Defendant claims it means, Defendant's objection must fail.

### E. Violation of Federal Rules of Criminal Procedure

Finally, Defendant argues the Court should suppress the money counter and scales seized from Trailer #2 because the federal agents failed to comply with Fed. R. Crim. P. 41(b). As Defendant concedes, this argument is contrary to precedent, including controlling authority from the Sixth Circuit. *United States v. Dudek*, 530 F.2d 684, 687 (6th Cir. 1976). Since the Sixth Circuit has previously rejected this argument this Court need not consider it further.

## IV. CONCLUSION

For the foregoing reasons this Court will **DENY** Defendant's motion to suppress the evidence found in Defendant's Suburban and at Trailer #2.

An Order shall enter.

                                             **/s/**
                                             **CURTIS L. COLLIER**
                                             **CHIEF UNITED STATES DISTRICT JUDGE**